1  Hon. Stephen E. Haberfeld (Ret.)
2  JAMS
   555 W. 5th Street, 32nd Floor
3  Los Angeles, CA 90013
   Tel: 213-620-1133
4  Fax: 213-620-0100

5

6  Special Master

**FILED**
CLERK, U.S. DISTRICT COURT

9/14/17

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ SR _____ DEPUTY

7

8            UNITED STATES DISTRICT COURT

9            CENTRAL DISTRICT OF CALIFORNIA

10

11  JESUS ESCOCHEA,

12          Plaintiff,

13          vs.

14

15  THE COUNTY OF LOS ANGELES;
16  RONALD VALDIVIA, in his individual
    and official capacity; STEVE COOLEY, in
17  his official capacity; JACKIE LACEY, in
    her official capacity; KEITH KAUFFMAN,
18  in his official capacity; and THE CITY OF
19  HAWTHORNE,

20          Defendants.

)  Case No.: 2:16-cv-00271 JFW (JEMx)
)
)  [Assigned to Hon. John F. Walter,
)  Courtroom 7A]
)  ORDER ACCEPTING AND ADOPTING
)  AMENDED REPORT AND
)  RECOMMENDATION OF SPECIAL
)  MASTER, PURSUANT TO COURT'S
)  ORDER OF AUGUST 10, 2017
)
)
)
)
)
)

21  _____

22      /////

23      /////

24      /////

25      /////

26

AMENDED SPECIAL MASTER'S REPORT AND RECOMMENDATION TO COURT  -  1

# SPECIAL MASTER'S REPORT TO THE COURT

## Introduction and Summary of Determinations

On August 10, 2017, the Court ordered appointment of a Special Master to prepare and file a report and recommendation to the Court by September 8, 2017, concerning disputed 42 U.S.C. Sec. 1988 attorneys' fees requested by plaintiff Jesus Escochea (occasionally, "Plaintiff"), as a court-determined prevailing party in his "1983" federal civil rights action. Mr. Escochea was determined by the Court to be the prevailing party,[1] for purposes of "1988" attorneys' fees, because the jury, after a two-day trial,[2] found in Mr. Escochea's favor on his (US Constitution) Fourth Amendment claim, in connection with a search warrant which was obtained and executed, without disclosing to the issuing judicial officer in the affidavit submitted in support of the requested search warrant that Mr. Escochea was a news reporter and that one of the sites to be searched, pursuant to the warrant, was the reporter's news office --- which the jury determined the Defendants knew was so, when the affidavit was prepared and submitted.[3]

Relatedly --- for purposes of the U.S. Supreme Court's Hensley[4] "common core of facts/related legal theories" analysis --- Plaintiff''s overarching theory of the case, was (A) applicable to all of Plaintiff's constitutional and other claims which were pled in this action and (B) was conceded to be Plaintiff's theory by Defendants' counsel, during the

---

[1] See Court's July 14, 2017 Order, at p. 7, stating that plaintiff is the prevailing party for purposes of an attorneys' fees award. [Tab 17]

[2] The trial was limited to a two-day trial, including closing, at the Court's order.

[3] The jury answered the following question --- which was Question No. 2 in its Verdict Form --- in the affirmative:

"Did plaintiff Jesus Escochea prove by a preponderance of evidence that defendant Ronald Valdivia violated plaintiff Jesus Escochea's Fourth Amendment rights by intentionally concealing or concealing with reckless disregard for the truth from Judge Hall that he knew Location #6 to be plaintiff Jesus Escochea's offices and that plaintiff Jesus Escochea was a member of the press when defendant Ronald Valdivia sought the search warrant for Location #6?" [Verdict Form, Tab 15].

[4] Hensley v. Eckerhart, 461 U.S. 424 (1983).

August 29, 2017, four-hour, in-person "roundtable" conference, convened by the Special Master ("Special Master's Conference")[5] --- was and remains, as follows:

From the inception of this 42 USC Sec. 1983 action through post-trial, including during the Special Master Conference, Mr. Escochea has alleged a conspiracy between and among the named defendant governmental agencies and individual defendants, who were employees of the defendant governmental entities --- the purpose and object of which conspiracy, including Defendant Valdivia's opening and conducting a criminal investigation of Mr. Escochea --- was to harass and punish Mr. Escochea, who was known by the Defendants to be a reporter, who had an office (which was Location #6 in the subject search warrant) and, relatedly to chill and discredit Mr. Escochea's journalistic investigation into alleged corruption within the government of the City of Hawthorne.

The Special Master's key summary of the determinations set forth below in this Report is as follows:

Based on the analysis and reasons set forth in this Report, the Special Master has determined that --- under Hensley and its appellate progeny, and regardless of which claims and/or individual or governmental defendants were dismissed or not dismissed from this action, for any reason, at any time before through verdict or thereafter --- Defendants are not entitled to a 50% discount or a discount in any percentage or amount for attorney time billed to establish any claim or the liability of any named Defendants for any claim having been determined by the Special Master to have met the Hensely "common core of facts/related legal theories" test.

Except for the specific reductions, deductions and exceptions noted below --- which, in the aggregate, are not believed material, except as to Plaintiff's claimed economic damages, as discussed below -- Paul K. Cohen, Esq. and Paul M. Ferlauto, Esq. should be compensated for nearly all their billed time which the Special Master has determined that they have expended in connection with this matter --- at the rates of

[5] The Court is respectfully referred to n. 13, infra.

$600 per hour for Mr. Cohen's in-court time, $500 per hour for Mr. Ferlauto's out-of-court time (primarily in taking depositions of witnesses who testified at trial and preparing pleadings and other pre-trial papers), and $450 per hour for Mr. Ferlauto's time for his service as "second chair" during trial.[6] The Special Master recommends that Lisa V. Houle, Esq. be compensated at the rate of $375 per hour, for 92 hours of service and time rendered by Ms. Houle, which the Special Master has determined to be appropriate in the circumstances, as amplified below.[7] No "lodestar" multiple has been requested or recommended or considered in connection with any of the Special Master's determinations or recommendations to the Court.

   Also, for the reasons amplified below, the Special Master recommends to the Court that it (A) include in its attorneys' fee award the recommended time expended by Messrs. Cohen and Ferlato since June 20, 2017, including especially in connection with the Special Master's proceeding and, additionally, (B) reallocate financial responsibility for the Special Master's service, from each side bearing a one-half (1/2) share, to Defendants' bearing a two-thirds (2/3) share and Plaintiff bearing a one-third (1/3) share.

---

[6] As also covered elsewhere herein, Messrs. Cohen and Ferlauto should be compensated for their case-authorized travel to and from court (e.g., February 7 and 21 and March 30, 2017 and for the two days of trial on April 4 and 5, 2017) and to JAMS' Century City Resolution Center for the Special Master's Conference, at half their hourly rate for in-court services --- Mr. Cohen at $300 per hour and Mr. Ferlauto at $225 per hour in re court-related travel and at $250 per hour in connection with the Special Master's Conference-related travel. Ms. Houle should be compensated for travel at one-half of her hourly rate ($188) for one-hour credited appearance at the Special Master's Conference, during which she defended her erroneously and repeatedly challenged status as counsel of record on behalf of Mr. Escochea.

[7] As also covered below, the time period for Ms. Houle's most valuable legal services were performed between August 2015 and mid-January 2016, when the initial pleadings commencing this action were filed. No attorney declaration(s) or billings indicate that the substantial attorney time Ms. Houle billed for thereafter resulted in written or other work product which was meaningfully used by any other member of the trial team until a brief period immediately prior to the conclusion of trial.

The Special Master's Report and Recommendation are the on-time results of the undersigned's best efforts, in the circumstances, in light of the following temporal and other material limitations and constraints:[8]

A) The documents and information and pertinent cases presented to the Special Master by both sides, which underlay this Report and Recommendation, were acquired and evaluated in a highly compressed time frame, established under the Court's August 10, 2017 Order --- specifically, that all Special Master proceedings had to be completed by September 1, 2017 and that the Special Master's Report and Recommendation had to be in preparation over the Labor Day Holiday and filed by September 8, 2017.

B) The undersigned received informal word of having been selected late in the afternoon of August 23, 2017 and received first copies of the Court's August 10, 2017 Order and the parties' Joint Report, which the Court referenced in that Order (see below), shortly before Noon on August 25, 2017 --- preparatory to a "quick-set" introductory teleconference with all counsel, convened by undersigned for 1:30 p.m. on August 25, 2017.

C) The attorneys' fees application papers submitted by both sides appear to have been written in contemplation of review, analysis and decision by Your Honor, as the trial judge of this matter --- who, the undersigned believes, presided at trial and was

_____

[8] The determinations in Report and Recommendation to the Court, include determinations by the Special Master, which the Special Master has determined to be true, correct, necessary and/or appropriate for purposes of this Report and Recommendation to the Court. To the extent that the Special Master's determinations differ from any party's positions, that is the result of determinations as to relevance, burden of proof considerations, the weighing of the evidence, etc.

Because of the Special Master's concern for and emphasis on thoroughness and correctness of review, understanding, analysis and determinations underlying and set forth in this Report and Recommendations to the Court, within the tight time constraints of the Court's August 10, 2017 Order, the Special Master apologizes to the Court for any undue repetition and other editing, formatting, punctuation, typographical, spacing, and other inadvertent and/or apparently incurable errors made by the Special Master in connection with preparation of this document for timely submission to the Court.

For the convenience of the Court, at the invitation of the Court Clerk, this Amended Report has been prepared, incorporating the corrections set forth in Notice of Errata.

familiar with pleadings claims, issues and contentions in this 1983 action, plus the context of procedural resolution of the dismissal of all claims save one before trial and, additionally, the performance and conduct of counsel throughout the underlying merits litigation --- and not by a Special Master "parachuting" into this matter on a tight schedule, special assignment, without any of the foregoing familiarity and other preparation, beforehand.

D) The flaws of both sides in the parties' Joint Report, as noted by the Court, on the basis of which the Court decided to prepare and issue the August 10, 2017 Order.

E) The difficulty of the Special Master's assignment was complicated by Defendants' belated presentation during the afternoon of August 30, 2017 of new cases, which had not theretofore been presented or cited to the Court, the Special Master, or Plaintiff's counsel, in any earlier papers. Based on that belated submission, the Special Master requested a "quick-set" call with counsel to discuss those cases during the morning of September 1, 2017 --- which yielded a teleconference with counsel, commencing at 11:00 a.m. --- with requested responses by each side to the cases submitted by the other side to be exchanged and received by the Special Master by 4:00 pm. that afternoon, in order to be in compliance with the Court's August 10, 2017 Order.[9]

The bases for the Special Master's Report and Recommendation to the Court include the following documents and other papers which have been generated by the Court or counsel for the parties on and since the August 10, 2017:

A) The Court's Order of August 10, 2017

B) Counsel's Joint Report to the Court re their respective positions on Plaintiff's attorneys' fees request, which led to the issuance of the Court's August 10, 2017 Order.

C) Papers submitted to the Court, prior to the Court's August 10, 2017 Order, in support of and in opposition Plaintiff's motion for attorneys' fees (including moving, opposition and reply papers).

---

[9] The Court is respectfully referred to n. 13, _infra_.

D) Initial and supplemental memoranda re disputed requested attorneys' fees submitted to the Special Master before and after the four-hour Special Master Conference.

E) "Hard copies" of cases provided to the Special Master during and following the Special Master Conference.

F) Copies of documents in a 24-tab, 3-ring notebook submitted by Plaintiff's counsel during the Special Master Conference --- including the following:[10]

1.  Plaintiff's Supplemental Brief Re Special Master Proceeding to Determine Attorney Fees (Tab 2),

2.  The jury's Verdict Form (Tab 15),

3.  The Court's July 14, 2017 Order granting Plaintiff's motion for attorneys' fees (Tab 17).

4.  The declarations of Southern California attorneys Browne Greene, Esq., Christopher Brizzollara, Esq., Mark Garagos, Esq. Paul D. Murphy, Esq., Alison Polin Saros, Esq. and Robert Ernenwein, Esq., primarily in support of requested attorney's fees rates of Plaintiff's counsel (Tabs 4-9),

5.  Supplemental declarations of Plaintiff's counsel Philip K. Cohen, Esq. and Thomas M. Ferlauto, Esq. (Tabs 2-3).

6.  2016 Real Rate Report (Tab 23).

7.  Summaries of corrected time chart/billing records of Plaintiff's counsel (Tab 24).

8. Copies of the docket sheet, pleadings, orders, stipulations, trial transcript, etc.

---

[10] The Table of Contents for the referenced documents in the 24-tab, 3-ring binder submitted by Plaintiff's counsel during the Special Master Conference is annexed to this Report as Appendix "A."

Annexed to this Report as Appendix "B" is a "hard copy" of the Special Master's August 28, 2017 email to counsel, detailing the documents and information which should be produced and discussed during the August 29, 2017 in-person "roundtable" conference with counsel, convened by the Special Master during a "quick-set," initial, introductory teleconference with counsel held during the afternoon of August 25, 2017.

G) The Special Master has had to rely heavily on the written and oral representations of counsel --- because the Special Master did not have first-hand knowledge or a hearing transcript and other reliable documentary bases for what occurred prior to and during trial, which led to the jury's verdict resolving Plaintiff's Fourth Amendment claim and the subsequent attorneys' fees application which the Court referred to the Special Master under the August 10, 2017 Order.

**Analysis And Application Of Hensley And Its Progeny To Plaintiff's "Limited Success"**

The facts and circumstances of <u>Hensely</u>'s appellate "limited success" progeny which appear to be closest to the facts and circumstances of this case is the Tenth Circuit's opinion in <u>Flitton v. Primary Residential Mortgage, Inc.</u>, 614 F.3d 1173 (2001) ("<u>Flitton</u>"). In that case, the defendant claimed that attorneys' fees had to be adjusted downward, because of the plaintiff's "limited success" in having succeeded on only one of five of her claims and proved damages which were 1% of the amount of attorneys'

/////
/////
/////

fees requested in that case. The Court of Appeal, under <u>Hensley</u> and prior Tenth Circuit authority, unanimously held that the attorneys' fees should be awarded in full.[11]

However --- as part of their belated August 30, 2017 afternoon submission to the Special Master, alluded to above --- Defendants counsel submitted a newly cited Ninth Circuit case, <u>Schwarz v. Secretary of Health & Human Services</u>, 73 F.3d 895 (1995) ("<u>Schwarz</u>"). The panel there --- while noting that [w]e have had few occasions to consider whether claims are related or unrelated under <u>Hensley</u> --- expressly noted that in a 1989 case and since "we added something" to the <u>Hensley</u> analysis, so that "we read <u>Hensley</u> as establishing the general rule that plaintiffs are to be compensated for attorney's fees incurred for services that contribute to the ultimate victory in the lawsuit.

/////

/////

/////

---

[11] See also <u>Sorenson v. Mink</u>, 239 F.3d 1140, 1149 (9th Cir. 2001) ("<u>Sorenson</u>"), which relied on <u>Hensley</u> and favorably cited <u>Odima v. Westin Tucson Hotel</u>, 53 F.3d 1484, 1499 (9th Cir. 1995), in applying the test for "limited success" under <u>Hensley</u>. The Court of Appeals in <u>Sorenson</u> pertinently stated as follows:

"<u>Hensley</u> sets out a two-step process for analyzing a deduction for 'limited success.' The first step is to consider whether 'the plaintiff fail[ed] to prevail on claims that were unrelated to the claims on which he succeeded.' <u>Id</u>. at 434, 103 S.Ct. 1933. Claims are 'unrelated' if they are 'entirely distinct and separate' from the claims on which the plaintiff prevailed. <u>Odima</u>, 53 F.3d at 1499. Hours expended on unrelated, unsuccessful claims should not be included in an award of fees.

"Here, Plaintiffs' claims all were related. All focused on improving Oregon's disability determination system. They 'involve[d] a common core of facts' and were 'based on related legal theories.' <u>Hensley</u>, 461 U.S. at 435, 103 S.Ct. 1933. In such cases, '[m]uch of counsel's time will be devoted generally to the litigation as a whole.... Such a lawsuit cannot be viewed as a series of discrete claims.' <u>Id</u>.

"The second step of the <u>Hensley</u> analysis is to consider whether 'the plaintiff achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award.' <u>Id</u>. at 434, 103 S.Ct. 1933. In answering that question, a district court 'should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.' Id. at 435, 103 S.Ct. 1933. 'Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee.' <u>Id</u>. A plaintiff may obtain excellent results without receiving all the relief requested. <u>Id</u>. at 435 n. 11, 103 S.Ct. 1933."

Thus, even if a specific claim fails,[12] the time spent on that claim may be compensable, in full or in part, if it contributes to the success of the other claims."

By belatedly citing <u>Schwarz</u>, it appeared to the Special Master that Defendants' for the first time were raising, as part of their opposition, <u>Schwarz's</u> causation-related "added test" of "contribution to ultimate victory" --- as to which it appeared to the Special Master[13] that Plaintiff has the burden of proof --- even assuming, as the Special

---

[12] Earlier in <u>Schwarz</u>, the Court of Appeals held "We therefore conclude that a claim may be deemed unsuccessful under <u>Hensley</u> once it has been dismissed by the plaintiff or by the court, regardless of whether the dismissal would have been upheld on appeal, and regardless of whether the dismissal is based on legal or factual inadequacy."

[13] The Special Master's assignment for resolution within a very tight time frame was complicated and protracted by Defendants' counsel bringing forward cases toward the very end of the Special Master proceeding --- during the afternoon of August 30, 2017 -- which cases the Special Master believes could and should have been in Defendants' opposition papers filed with the Court in June or, at the latest, in Defendants' first written submission to the Special Master on August 28, 2017.

The Special Master further notes that --- during the August 29, 2017, in-person "roundtable" conference, Defendants' counsel, throughout, showed (A) a disinclination to respond in specifics requested by the Special Master separately as to the relationship, if any, to Plaintiff's successful Fourth Amendment claim of each of Plaintiff's claims which did not go to the jury, as part of the Special Master's <u>Hensley</u> analysis, and, further and relatedly (B) a proclivity to respond to the Special Master's <u>Hensley</u> questions with references to "lodestone"-calculation matters, such as asserted duplication, travel time, billing by the quarter hour and other allegedly unnecessary and thus non-compensable actions by Plaintiff's counsel. In the last analysis, those challenges have amounted, at most, to non-cost-effective, small nibbles around the edges of the billed substantial service of Mr. Escochea's counsel.

Nevertheless, during the August 29, 2017 "roundtable," the Special Master responded to Defendants' counsel that we would --- as we did -- take his contentions out of turn, if Defendants' counsel would agree to return from digression to responding to the Special Master's inquiry concerning <u>Hensley</u>-related specifics. Eventually --- having apparently grown weary of continuing in the vein of not giving requested specifics, claim-by-claim, notwithstanding the Special Master's express caution that, in so doing, Defendants would be deemed to have <u>sub silentio</u> conceded to Plaintiffs' counsel each claim inquired of by the Special Master as being within <u>Hensely</u> "common core of facts/related legal theories" ---- when the Special Master turned to the <u>Monell</u> issue and then Plaintiff's state-based claims, Defendants' counsel expressed readiness to move back to and concentrate on challenged duplication, excessive hours, etc.

The foregoing actions by Defendants' counsel, during and almost to the Court's deadline for the close of the Special Master's proceedings provide not only a basis for the Special Master's <u>Hensley</u>-related determinations, but also furnish the basis for the Special Master's additional recommendation that the Court reallocate the parties' respective financial responsibilities for the cost of the Special Master proceeding.

Master has also determined, that Plaintiff had satisfied the <u>Hensley</u> factual/legal test of "common core of facts/related legal theories."

After complaining of the Defendants "moving the goal posts," presenting "moving targets" and suggesting the Defendants had effectively waived the matter or were estopped by possibly tactically lying back and waiting virtually to the last minute, until Plaintiffs' counsel could not effectively respond,[14] Plaintiff's counsel made representation in response, on the basis of which the Special Master has made the following determination.

The Special Master has determined that the facts which underlay Plaintiff's First Amendment claim and all Plaintiff's other claims (including the <u>Monell</u> claim and claims involving dismissals before trial of individual and governmental defendants) --- which are deemed "unsuccessful" under <u>Hensley</u> and its Ninth Circuit progeny, including <u>Schwarz</u> --- (A) not only are "related" claims for purposes of compensability under the <u>Hensley</u> "common core of facts/related legal theories" test (B) but, further, are inextricably intertwined with Plaintiff's ultimately successful Fourth Amendment claim, for purposes of satisfying the <u>Schwarz</u> "added test" of "contribution to ultimate victory."[15]

The facts underlying Plaintiff's First Amendment claim --- made by plaintiff as an investigative reporter, claiming Defendants' infringement of his "freedom of the press" constitutional rights under the First Amendment --- were factually, legally, and as a

---

[14] During the September 1, 2017 "quick-set" teleconference, the Special Master responded to Mr. Cohen's complaint, by saying that it was more important to get it right than to rely on waiver, estoppel or undue delay --- if, as appeared, the Ninth Circuit opinion was properly understood by the Special Master and still the law in the Ninth Circuit. The Special Master further stated that --- while still within the parameters of the Court's August 10, 2017 Order --- it was still possible, correct and fair for both sides to present and argue, in light of the Special Master's reading of Defendants' belatedly-submitted authority.
In essence, Plaintiff's counsel persuasively represented that the same facts established both (A) qualification for "common core of facts" and (B) satisfaction of the Ninth Circuit's additional requirement, beyond commonality of "core facts" and/or related legal theories.
[15] While the <u>Monell</u> claim was also derivative of and inextricably intertwined with Mr. Escochea's successful Fourth Amendment claim, Plaintiff's request for attorneys fees do not include any attorney time spent exclusively on the <u>Monell</u> claim. Plaintiff's Second Supplemental Brief Re Motion For Attorney Fees, at p. 4:7-12.

matter of litigation practicality, inextricably intertwined --- so that all actions taken by Mr. Escochea's counsel to take discovery on and prove liability on his First Amendment claim, which was dismissed before trial, were reasonably necessary to prevail on Plaintiff's Fourth Amendment claim. In other words, the success of Mr. Escochea's First and Fourth Amendment claims were interdependent on one another.

The interrelationship between Mr. Escochea's Fourth Amendment claim and his other dismissed claims was persuasively shown by the Special Master's accepted representation of Plaintiff's counsel that the witnesses who were deposed and would have been called as witnesses as part of plaintiff's First Amendment claim, had it gone to trial --- i.e., City of Hawthorne Police Capt. Keith Kauffman and City of Hawthorne Human Resources head Robert O'Brien, as well as Defendant Ronald Valdivia --- testified as witnesses for the Defendants as part of what the jury determined was Mr. Escochea's proved Fourth Amendment claim against Defendant Valdivia and the County of Los Angeles, notwithstanding the earlier dismissal from the case, per settlement, of Capt. Kauffman and the City of Hawthorne.[16]

The Schwarz panel recognized that there is a Hensley-based "excellent results" exception to the Ninth Circuit's "contribution to victory" added test --- assuming, as determined by the Special Master, satisfaction of the "related claims" test under Hensley --- which would result in a plaintiff's "recover[y of] a fully compensatory fee...[which] should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." Schwarz, 73 F.3d, at p. 905, citing Hensley at 461 U.S. at p. 435.

As in Flitton, the "excellent results" test was satisfied in this case. Here, that satisfaction was shown by the jury's awarding Mr. Escochea punitive damages in an amount which were four (4) times greater than the amount which the jury awarded him as compensatory damages. Defendants' characterization of the jury's monetary award

---

[16] The Special Master, however, has not allowed credit for attorney time billed in connection with City of Hawthorne witnesses (Mayor Alex Vargas and Robert Faber), who did not testify either as deponents or trial witnesses.

to Mr. Escochea as a "paltry verdict" of $12,500 in the aggregate missed or failed to acknowledge the significance --- for purposes of a court's award of substantial attorneys' fees for counsel's key role in a successful vindication of important, if not fundamental constitutional rights, notwithstanding modest compensatory damages --- of the jury's determination that a high multiple of the compensatory damages found was appropriate and to be imposed on the Defendants as punitive damages in the circumstances.

As stated in the introductory summary of this Report, under <u>Hensley</u> and its appellate progeny, including <u>Schwarz</u> --- and regardless of which individual or governmental defendants were dismissed or not dismissed from this action, for any reason, at any time before through verdict or thereafter --- Defendants are not entitled to a 50% discount or a discount in any percentage or amount for attorney time billed to establish any claim or the liability of any of any named defendants for any claim having been determined by the Special Master to have met the <u>Hensely</u> "common core of facts/related legal theories" test.

### Plaintiff's Economic Damages Case

The foregoing "inextricably intertwined" analysis covers much but not all attorney time --- especially or solely attorney time spent on Plaintiff's claimed damages --- as to which Plaintiff was hardly successful, as evaluated by the ratio between amount of damages claimed and amount of damages awarded.

While Plaintiff's counsel have relied upon <u>Moreno</u>,[17] as appellate authority that billed time by contingency fee attorneys' should be deemed presumptively reasonable --- both as to actions taken and time billed for those actions --- the Special Master has not been presented with any case authority squarely or bearing on the Special Master's doubt concerning attorney time billed and actions taken by Plaintiff's counsel to establish Plaintiff's compensatory damages in the neighborhood of a claimed amount of

---

[17] <u>Moreno v. City of Sacramento</u>, 534 F.3d 1106, 1112 (9th Cir. 2008).

almost $90,000 up to $1.4 million[18] --- which was greatly in excess of the $2,500 amount which the jury determined to be compensable --- should be awarded as compensable nearly as fully, as and for attorney time and actions to prove the inextricably intertwined facts which supported Plaintiff's related constitutional and other claims.

The Special Master has deducted from the Plaintiff's submitted billings 25 hours of Mr. Ferlauto's time, billed during the period January 24, 2017 through February 5, 2017 and on February 20 --- and has not credited Ms. Houle with the more than 20 hours for which she billed in connection with preparation of Plaintiff's economic damages case --- which the Special Master has determined was attorney time which did not meaningfully contribute to the ultimate success of Mr. Escochea's Fourth Amendment claim. Or, put another way --- even assuming that all applicable <u>Hensley</u> tests for qualifying for attorneys' fees have been made, as has been determined by the Special Master --- none of that economic damages case billed time was determined by the Special Master to be reasonably necessary on behalf of Mr. Escochea, as part of the lodestar analysis.

///// 
///// 
///// 

---

[18] Plaintiff's counsel explain and concede in their Second Supplemental Brief, that Mr. Escochea's "case was never about damages" and that his economic monetary damages claims for lost profits due to allegedly lost TV projects on Mr. Escochea's seized computer hard drive were "probably speculative," and that Mr. Escochea's claim for $88,000, after his voluntary dismissal of his $1.4 million claim, was not specifically argued to the jury, which returned with an unexplained $2,500 compensatory damage award, as well as with its $10,000 punitive damage award. Brief, at p. 5.

The Special Master, respectfully, does not agree with Plaintiffs' counsel that <u>Flitton</u> or other cited appellate case mandates or is/are persuasive authority that --- for purposes of damages, as opposed to liability, coupled with a determination of nominal monetary compensatory damages, plus a four-fold award of punitive damages -- Plaintiff's counsel should be awarded attorneys fees on a fully compensated or nearly fully compensated basis for the substantial number of attorney hours spent on Plaintiff's damages case in the circumstances.

**Ms. Houle Has Been And Remains Counsel of Record, However, Her Compensable Contribution To Plaintiff's "Limited Success" Under Hensley, Since An Early Phase Of This Litigation, Has Been Limited**

Defendants have incorrectly and repeatedly asserted in their opposition papers and in the Joint Statement and after that Ms. Houle "was never counsel of record" in this case. Ms. Houle filed a formal appearance of counsel in this case, dated January 18, 2017, filed February 6, 2017 (Doc. No. 143) --- a copy of which was presented during the August 29, 2017 in-person conference --- and there is nothing in the record presented to the Special Master that she ceased being a counsel of record. Defendants similarly have not produced a requested excerpt of the hearing transcript of the January 19, 2017 hearing, during which both sides agree that the Court made an order concerning Ms. Houle. On August 30, 2017, Plaintiff's counsel produced to the Special Master Ms. Houle's direct testimony at trial, at the outset of which she testified --- without contradiction or impeachment on cross-examination --- that she then was "one of the attorneys on the case for the plaintiff" and that she earlier was "outside barred from the courtroom awaiting [her trial] testimony." Ms. Houle's billing records contain an unobjected-to notation that she participated in an "all hands" conference call with other counsel on February 28, 2017. As set forth above, Ms. Houle's entitlement to an award of attorneys' fees is another matter --- having been determined by the Special Master to have expended 92 hours of effective attorney time on behalf of Mr. Escochea, prior to and after becoming a member of his trial team in this action, at an appropriate compensable rate of $375 per hour.

**"Staffing Up," Hourly Rates And Defendants' Other Reasonableness Challenges**

During the two-day jury trial of this case, Mr. Cohen was Plaintiff's chief trial counsel, assisted in court by Mr. Ferlauto as "second chair. " Mr. Cohen opened, closed, and questioned all witnesses on behalf of Mr. Escochea. On out-of-court strategy, tactics (including review of papers and communications from the other side) and

related matters[19] --- other than preparation of papers and the taking of depositions --- Messrs. Cohen and Ferlauto appear to have been co-equal teammates. Mr. Ferlauto had primary responsibility for taking depositions and preparing papers on behalf of Mr. Escochea. Ms. Houle's legal work appears to have been primarily investigative until shortly following her bringing Mr. Escochea and his claims, which she had initially investigated and developed, to Messrs. Cohen and Ferlauto for commencement of this action and prosecution of Mr. Escochea's claims through trial.[20]

In evaluating appropriate "staffing up," hourly rates and actions of Plaintiff's trial team, as amplified in footnote 23, *infra*, the Special Master has employed an analysis which the Special Master believes would yield a correct and appropriate result.

Because Defendants' trial team has consisted of three (3) attorneys,[21] two of whom sat at Defendants' counsel table throughout trial, Defendants' challenging Plaintiff's counsel for having done the same has questionable merit --- that is so, particularly because Mr. Ferlauto has practiced law in the area of complex litigation before the federal and state courts for at least 20 years more than Ms. Peterson, who has had two trials over her four years of practice, albeit in the same subject matter area as this case. Similarly, because Mr. Gutterres and Ms. Peterson both billed at an apparently governmentally-capped $350 per hour --- with Ms. Peterson being a four-year lawyer billing at the same rate as Mr. Guterres, with 26-years of primarily civil rights experience --- Defendants' arguing that the Special Master should look to and

---

[19] Based on a careful review of the billing records [Tab 24] to evaluate and resolve Defendants' challenges to the reasonableness of time billed and submitted by Plaintiff's counsel, the Special Master has not accorded any not credit to any of Defendants' challenges for entries made by either Mr. Cohen or Mr. Ferlauto as being "duplicative" of entries made by his co-counsel.

[20] The parties have been in serious dispute about whether the Court, on about January 19, 2017, ordered Ms. Houle not to sit at Plaintiff's counsel table (Plaintiff) or to be in the courtroom until after her appearance as a percipient witness (Plaintiff) or to have been allowed to be counsel of record in this case at all (Defendants), after that order, because Ms. Houle, without dispute, was a witness on statute of limitations issues. Nevertheless --- including because Ms. Houle, in the event, was not allowed by the Court to sit at counsel table as opposed to sitting in the public gallery, the value of her services as counsel during trial have been greatly discounted.

[21] Thomas A. Guterres, Esq., Lisa L. Peterson, Esq. and Rebecca S. King, Esq. of Collins Collins Muir + Stewart LLP.

primarily rely on the Real Rate figures for senior litigation lawyers in small firms would put both Messrs. Cohen and Ferlauto at a rate below Defendants' counsel --- does not appear to be helpful in the circumstances.

While District Court cases cited by Defendants have referred to and even relied on the Real Rate Report --- which, Defendants contend emphasizes the importance of firm size (i.e., direct relationship between firm size and hourly rate (i.e., here, the smaller the firm, the lower the hourly rate)) --- the Special Master has determined that the recently submitted declarations of Christopher Brizzolara, Browne Greene, Mark Garagos and Paul D. Murphy, as well as the supplemental declarations of Messrs. Cohen and Ferlauto provide competent, detailed, substantiated and more apt bases upon which to make a recommendation to the Court as to the reasonableness of the requested rates of Messrs. Cohen and Ferlauto at $600 per hour[22] and $500 per hour for

/ / / / /

/ / / / /

/ / / / /

---

[22] The referenced declarations support the reasonableness of Mr. Cohen's services, by stating that his requested rate is below the market rate for the services of his quality and experience --- including his having been the partner head of Venable LLP's white collar practice. Mr. Cohen's Supplemental Declaration (Tab 2) states that he has tried in excess of 135 cases, where his billable rate was $605 per hour and that this past June, in successfully defending the nephew of Michael Jackson against a TRO sought by Michael Jackson's mother, Los Angeles Superior Court Judge Rolm M. Treu awarded Mr. Cohen all of his hours billed at the rate of $600 per hour.

Mr. Ferlauto's Supplemental Declaration (Tab 3), at Par. 10 thereof, contains an analysis of the 2016 Real Rate Report (Tab 23), on the basis of which he asserts that the appropriate data therein for representing a plaintiff in a strongly-governmentally-opposed federal civil rights action are "the rates shown in the Third Quartile [, being] the best measure of the rates to be applied to the reasonable time. *The Third Quartile rates are not the highest rates in the dataset, but are the middle point between the Median rates and the highest rates. That would result in rates for both Mr. Cohen and myself (who both have more than 25 years experience) of $875 per hour..."* [Italics in the original]*

[*The Special Master did not complete the above-quoted sentence because, as amplified elsewhere herein, the Special Master respectfully disagrees that the same data would be applicable to Ms. Houle, as a 15-year lawyer, at an hourly rate of $625 per hour.]

the highest and best use of their legal skills as members of Mr. Escochea's trial team in this case[23] --- which, speaking in the most general terms would be Mr. Cohen's in-court service and Mr. Ferlauto's out-of-court service, primarily "on the papers" prepared and presented on Mr. Escochea's behalf and taking and defending depositions in the case.[24]

_____

[23] The Special Master has superimposed on Plaintiff's trial team an "as if" model to help determine appropriate billable rates --- i.e., as if they were all in the same law firm, rather than solo practitioners, "staffing up" a significant, albeit contingency fee, case for the firm in an efficient, cost-effective manner --- with two senior partners leading in their respective spheres of in-court and out-of-court specialties, with the third lawyer, a former senior county prosecutor and recent 2015 civil litigator having brought Mr. Escochea and his case into the firm, maintained primary contact with the client and helped support the team effort in reviewing and preparing papers in a secondary associate capacity.

What has persuaded the Special Master to determine Ms. Houle's hourly rate to be above Ms. Peterson's are (A) Ms. Houle's 15 years of experience, primarily as a senior prosecutor in a serious crime unit of the Los Angeles District Attorney's Office, before becoming a civil litigation attorney and (B) the baseline of Ms. Peterson's hourly rate of $350 per hour for her primarily supporting role in the same litigation, on behalf of Defendants, as a four-year associate, with two trials thus far to her credit.

As also covered later in this Report, the recommendation of the Special Master allows for case-authorized billed travel time,* but at one half (1/2) of the in-court rates for Messrs. Cohen (@ $300/hr for travel time) and Ferlauto (@225/hr for travel time). [*Anchondo v. Anderson, Crenshaw & Associates, LLC, 616 F.3d 1098, 1105-1106 (10th Cir. 2010)]

[24] For example, Mr. Ferlauto took the depositions of trial witnesses Defendant LA County District Attorney Investigator Ronald Valdivia (11/9/2016), City of Hawthorne Police Capt. Keith Kauffman (11/8/2016) and City of Hawthorne Human Resources head Robert O'Brien (9/1/2016), and defended the deposition of trial witness Plaintiff Jesus Escochea (11/2/2016).* Defendants have not objected to Mr. Ferlauto's services -- except, in the main, their objections that Mr. Ferlauto's credited time should cut in half, on bases not accepted by the Special Master. The Special Master has disallowed 1.4 hours of Mr. Ferlauto's 11/2/2017 and 11/20/2016 time, which was billed for preparation of a notice of taking deposition of City of Hawthorne Mayor Alex Vargas and Mr. Ferlauto's review of objections to the taking of Mr. Vargas deposition -- who was not deposed and did not testify at trial.

[*The Special Master has credited Ms. Houle with only two of the approximately 23 hours of time between October 10, 2017 and Mr. Escochea's deposition on November 2, 2017, which Mr. Houle billed in connection with the preparation of Mr. Escochea's deposition. The Special Master has not credited Ms. Houle for any of the 2.9 hours billed in connection with the preparation for and travel to and from her deposition as a percipient witness on November 18, 2017.]

The declarations submitted on behalf of Ms. Houle's requested hourly rate of $400 per hour are more thinly supported --- though they recognize and respect her 15 years of criminal law experience, much of which was in a special serious crimes unit of the District Attorney's Office, before Ms. Houle opened a private solo practitioner in 2015. The Special Master has determined that Ms. Houle should be compensated at the rate of $375 per hour for her important early investigative work, legal research and, based thereon, a recognition of enforceable rights for the violation of Mr. Escochea's civil rights and the correlative benefit, if not need, to put his case into the capable litigation hands of Messrs. Cohen and Ferlauto. After the commencement of this action--- based on the Special Master's interpretation of Ms. Houle's billings, including as compared with those of Messrs. Cohen and Ferlauto --- Ms. Houle's effective, compensable attorney time became rather limited in scope --- primarily as all counsel's main liaison and contact with Mr. Escochea, the full extent of which should not be fully compensable, as amplified below.[25] The recommended rate for Ms. Houle, in any event, should not be less than the $350 per hour billed by Defendants' counsel, Lisa L. Peterson, Esq., in connection with any compensable work which, within reasonable

/ / / / /

/ / / / /

/ / / / /

---

[25] The number of hours billed by Ms. Houle for examination of pre-trial discovery and preparation for trial, as a secondary member of Plaintiff's trial team, appears duplicative of time billed for the same type of tasks primarily by Mr. Cohen, or, in the event, excessive, in vacuo. Moreover, the billing records for Messrs. Cohen and Ferlauto and their declarations do not tend to show that they substantially relied on Ms. Houle's work as a member of the trial team, after the case got under way, post-complaint, except as the team's primary contact with Mr. Escochea, or that either of them used the work product and other results of Ms. Houle's extensive review of documents, which constitutes much of Ms. Houle's billed time, exclusive her substantial billed time on Plaintiff's claimed damages case, which does not appear to have been persuasive to the jury.

limits, includes Ms. Houle's working with Mr. Escochea, keeping him informed and helping to prepare him for deposition and trial.[26]

Based on the foregoing, the Special Master recommends that Ms. Houle be credited with an aggregate of 92 hours of attorney time effectively expended in this case --- primarily during the early pre-complaint stages of this litigation --- at the rate of $375 per hour, plus one hour at that rate for defending her status and role as counsel of record during the four-hour-long August 29, 2017 in-person Special Master Conference, plus 5.7 hours for travel (primarily including meetings with Judge Hall) --- excluding her other billed travel time --- at $188 per hour.

### The Challenged Disparity Between The Amount of Damages (Including Punitive Damages) Determined By The Jury And The Amount Of Attorneys' Fees Sought By Plaintiff

Defendants have asserted that what they see as disproportionality between the aggregate amount of $12,500 awarded and the initially approximately $435,000 --- now about $470,00 requested as attorneys' fees to be awarded in having producing that result. Hensley and its appellate progeny do not require a formula or even strict proportionality, especially where, as here, vindication of a fundamental constitutional right has been granted by a jury, which imposed punitive damages of four times the amount of compensatory damages determined. However --- just as the Special Master cannot ignore the significance of the jury's punitive damage award for purposes of an appropriate attorneys' fees award --- the Special Master cannot ignore the jury's having made a nominal or at best modest award which did not approach even the lower

---

[26] Ms. Houle has been additionally credited for 3.0 hrs in connection with her billed actions for putting together Plaintiff's trial notebook. As stated elsewhere herein --- because Ms. Houle was excluded by the Court from sitting at counsel table or even being in the courtroom during trial, no credit can be given for her presence in the courthouse during trial or for her related travel. Further, no credit has been given Ms. Houle, or any of Plaintiff's counsel, for time billed for preparation of Plaintiff's damages case --- including more than 20 hours billed by Ms. Houle. In addition, Ms. Houle's recommended compensable time will not include her time preparing or attending her own deposition or her attendance at court, where she was barred from the courtroom, and thus from any assistance at counsel's table, under court order.

reaches of Plaintiff's claimed damages in the multiple tens of thousands of dollars, let alone the "brass ring" of approximately $1.4 million sought by Plaintiff.[27]

 After having determined under <u>Hensley</u> and progeny that substantial percentage cuts in awardable attorneys' fees sought by Defendants are not warranted, the Special Master has determined that an adjustment must be made to the number of attorney hours spent on Plaintiff's economic monetary damages case to which the jury gave no meaningful recognition --- that is, beyond the jury's having apparently established a modest monetary base amount for purposes of a substantial multiple for jury message-sending to the Court, the Defendants and other government agencies and agents who would become aware of the jury's verdict, including those dismissed before the jury's verdict, and the public.

**Plaintiff's Request For Post-Verdict Attorneys' Fees**

 Because the Court is authorized to award post-trial attorneys' fees --- sometimes known as "fees on fees" to support and defend challenged requested compensable attorneys' fees--- and because the Special Master has determined that Defendants' counsel was primarily responsible for complicating and protracting the Special Master proceeding, as aforesaid, the Special Master will recommend to the Court additional fees for Messrs. Cohen and Ferlauto and Ms. Houle at their recommended full hourly rates for their attorney time expended since June 20, 2017 and the filing of Plaintiff's initial motion for attorneys' fees --- which would include Plaintiff's Reply, Joint Statement and Special Master proceedings through September 1, 2017 (including,

/////
/////
/////

---

[27] Plaintiff's claims for "lost profits" on projects which he contended were in his computer hard drive involved substantial attorney time and expense, very little of which Defendants contend was presented to the jury and which, in the event, it appears the jury did not recognize.

the in-person and telephonic conferences, preparation of papers, research and submission of cases, etc):

Paul K. Cohen, Esq. - 13.0 hours

Thomas M. Ferlauto, Esq. - 36.0 hours

Lisa V. Houle, Esq. - 1.0 hour,

plus travel time, for each of Plaintiff's counsel, at one-half (1/2) of their recommended respective rates for "highest and best" use of their professional services as members of Plaintiff's trial team in this case.

The Special Master will further recommend that the Court reallocate the cost of the Special Master's services from equal responsibility to Defendants being responsible for 2/3 and Plaintiff being responsible for 1/3 of the Special Master's services.

## Defendants' Challenges For Duplicative And Other Excessive Or Improper Billing (E.g., Billing By the Quarter Hour), Etc.

Based on the Special Master's careful review, analysis consideration of the billings prepared and submitted by Paul M. Cohen, Esq. and Thomas F. Ferlato, Esq., which are in Tab 24 of Plaintiff's 3-ring binder submitted in support of Plaintiff's request for attorneys' fees, the Special Master has made the following downward adjustments to the effective hours of attorney time submitted:

A.     As to Mr. Cohen, a reduction of 2.0 hours as excessive time, plus 9.0 hours travel time to and from Court for trial and the Special Master's Conference, which will be compensated at $300 per hour (i.e., 1/2 of Mr. Cohen's $600 hourly rate).

B.     As to Mr. Ferlauto, a reduction of 19.3 hours as excessive time (including Mr. Ferlauto's time expended in connection with Plaintiff's economic damages case and Mr. Ferlauto's voluntary reduction in connection with the Monell claim), plus 4.2 hours in connection with Mr. Ferlauto's billing entries challenged by Defendants as being by the quarter hour, instead of by the tenth of the hour, plus 10.8 hours for travel time to

and from Court for trial and other hearings and/or court conferences and the Special Master's Conference.[28]

      C.     As to Ms. Houle --- in view of Defendants' challenge to the entirety of Ms. Houle's submitted billings, based on a repeatedly asserted incorrect predicate that Ms. Houle has never been counsel of record in this case --- the Special Master has recomputed Ms. Houle's compensable hours of service, based on careful review and evaluation of her submitted billings as part of the Tab 24 billings, plus having credited Ms. Houle with one additional hour (plus related travel of 1.8 hours, at one half of her hourly rate of $375 per hour) for her in-person defense during the August 29, 2017 Special Master Conference of her status as counsel of record for Mr. Escochea in connection with his case and Ms. Houle's entitlement to an award of prevailing party attorney's fees, as determined by the Court.

/ / / / /

/ / / / /

/ / / / /

---

[28] As stated earlier, the Special Master has not accorded any not credit to any of Defendants' challenges for billing entries made by either Mr. Cohen or Mr. Ferlauto as being "duplicative" of entries made by the other.

# SPECIAL MASTER'S RECOMMENDATION TO THE COURT

Based on careful consideration of the papers made available to the Special Master, the written and oral representations of counsel, applicable law (including Supreme Court and appellate court case law in <u>Hensley</u> and its appellate progeny, and the determinations hereinabove set forth in the Special Master's Report to the Court, the undersigned Special Master makes the following recommendations to the Court:

1.    Plaintiff should be awarded his reasonable attorneys' fees under 42 U.S.C. Sec. 1988, in the aggregate amount of $350,099, computed as follows:

A.    Plaintiff should be awarded $102,960, as and for billed and submitted time reasonably expended by Paul K. Cohen, Esq. in connection with his role as chief trial counsel, for 168.0 hours, at the rate of $600 per hour, plus 7.2 hours travel time in connection with trial and the August 29, 2017 in-person Special Master conference, at the reduced rate of $300 per hour.

B.    Plaintiff should be awarded $211,925, as and for billed and submitted time reasonably expended by Thomas M. Ferlauto, Esq. in connection with Mr. Ferlauto's service as "second chair" at trial of this matter and for his role as principal author and drafter of Plaintiff's pre-trial, trial and post-trial papers and as having taken and defended the depositions n this case, for 16.0 hours, at the rate of $450 per hour, as "second chair" during trial, and for 404.5 hours at the rate of $500 per hour for all other compensable time, which was expended for the "highest and best use" of his professional services as part of Plaintiff's trial team, plus 9.0 hours travel time in connection with trial and other court appearance, at the reduced rate of $225 per hour re trial and 1.8 hour in connection with the August 29, 2017 in person conference, at the reduced rate of $250 per hour.

C.    Plaintiff should be awarded $35,214, as and for billed time expended and submitted by Lisa V. Houle, Esq., for 92.0 hours of her professional services, at the rate of $375 per hour, principally for Ms. Houle's role as principal

investigator and legal researcher of what became the factual and legal underpinnings for Plaintiff's claims in the early phase of this litigation, plus an additional one hour (plus travel time at the reduced rate of $188 per hour) for defending her status and entitlement to fees as counsel for Mr. Escochea, as the prevailing party in this case during the Special Master's Conference held on August 29, 2017.

2.      The Court should reallocate responsibility for the cost of the Special Master's proceeding and service, so that Defendants should be responsible for two-thirds (2/3), and Plaintiff should be responsible for one-third (1/3) of said cost.[29]

Dated: September 13, 2017                    Respectfully submitted,



_____

STEPHEN E. HABERFELD
Special Master

_____

[29] The Court is respectfully referred to n. 13, <u>supra</u>.

## ORDER

Having carefully read and considered the Special Master's Report and Recommendation to the Court, submitted in accordance with the Court's Order of August 10, 2017, and good cause appearing, the Court accepts and adopts the Special Master's Report and Recommendation as the determinations and rulings of the Court.

**IT IS SO ORDERED**.

Dated: September 14, 2017

_____
HON. JOHN F. WALTER
United States District Judge

# TABLE OF CONTENTS

1.    Plaintiff's Supplemental Brief RE Special Master Proceeding To Determine Attorney Fees;
2.    Supplemental Declaration Of Philip Cohen;
3.    Supplemental Declaration Of Thomas M. Ferlauto In Support Of Plaintiff's Motion For Fees; and
4.    Declaration Of Christopher Brizzolara In Support Of Plaintiff's Motion For Attorney Fees
5.    Declaration Of Browne Greene
6.    Declaration Of Mark Geragos
7.    Declaration of Paul Murphy
8.    Declaration Of Alison Polin Saros In Support Of Plaintiff's Motion For Attorney Fees
9.    Declaration Of Robert Ernenwein In Support Of Plaintiff's Motion For Attorney Fees
10.   Original Complaint
11.   First Amended (Operative) Complaint
12.   Minute Order RE Pre-Trial Conference
13.   Pre-Trial Conference Order
14.   Stipulation And Order RE Plaintiff's Claim Based Upon Violation Of The First Amendment
15.   Verdict
16.   Judgment
17.   Order Granting Plaintiff's Motion For Attorneys' Fees
18.   Plaintiff's Notice Of Motion And Motion For Attorney Fees; Memorandum Of Points And Authorities And declarations Of Thomas M. Ferlauto, Lisa Houle and Philip Cohen In Support Thereof
19.   Defendants County Of Los Angeles And Ronald Valdivia's Opposition To Plaintiff's Motion For Attorney Fees
20.   Plaintiff's Reply Brief In Support Of Motion For Attorney Fees
21.   Docket in Escochea v. County of Los Angeles 2-16-cv-00271
22.   Trial Transcript (condensed)
23.   Wolters Kluwer 2016 Real Rate Report
24.   CORRECTED - Attorney Time Chart (as of June 20, 2017)



APPENDIX "A"

 Gmail

**Stephen Haberfeld** <judgehaberfeld@gmail.com>

# Escochea v. County of Los Angeles [JAMS No. 1220057216]
1 message

**Stephen Haberfeld** <judgehaberfeld@gmail.com>                    Mon, Aug 28, 2017 at 9:01 AM
To: Tom Guterres <tguterres@ccmslaw.com>, "Philip Cohen (pcohen@pcohenlaw.com)"
<pcohen@pcohenlaw.com>, "TMF@lawofficetmf.com" <TMF@lawofficetmf.com>, "Kristy M. Eulloqui"
<kfarias@ccmslaw.com>, lpeterson@ccmslaw.com
Cc: "Geraldine Yulo (GYulo@JAMSADR.com)" <GYulo@jamsadr.com>, "cc: Laura Rios (LRios@jamsadr.com)"
<LRios@jamsadr.com>, "Vivian L. Maxwell" <viannotti@ccmslaw.com>, judgehaberfeld
<judgehaberfeld@ca.rr.com>

Good (Monday) morning, all.

Preparatory to tomorrow morning's working group round table meeting, would you please do the best you can
- employing your diligent best efforts, please - to provide me and all with the documentation and information
requested below - based on my initial review of the attorneys' fees papers emailed to me last Friday afternoon:

) (Plaintiff's counsel): Separately with respect to each and every cause of action/claim withdrawn and/or
dismissed, prior to the jury's verdict on plaintiff's Fourth Amendment claim, concisely state all material facts in
the record of this civil action and/or which are judicially noticeable, which show or tend to show that the cause
of action/claim involved a "common core of facts" and/or were based on one or more related legal theories in
common with the Fourth Amendment claim and/or was not a separate and distinct claim from the Fourth
Amendment claim.

) (Defendants' counsel): Separately with respect to each and every cause of action/claim withdrawn and/or
dismissed, prior to the jury's verdict on plaintiff's Fourth Amendment claim, concisely state all material facts
which show or tend to show that the cause of action/claim did not involve a "common core of facts" and/or
were not based on one or more related legal theories and/or was a separate and distinct claim from the Fourth
Amendment claim.

) Please provide the Special Master with all pleadings and other papers filed with or by the Court which show
or tend to show a "common core of facts" and/or related theories between plaintiff's Fourth Amendment claim
and one or more of plaintiff's other claims in this action --- including, if and as applicable, for instance --- (a)
Pl's most complete (amended) Complaint, containing all causes of action and claims filed in this action, (b))
Court's orders re MSJ's

) Please provide the Special Master with all pleadings and other papers filed with or by the Court which show
or tend to show that there are no "common core of facts" and/or related theories between plaintiff's Fourth
Amendment claim and one or more of plaintiff's other claims in this action --- including, if and as applicable, for
instance --- (a) Pl's most complete (amended) Complaint, containing all causes of action and claims filed in this
action, (b)) Court's orders re MSJ's

) (Plaintiff's counsel): Concisely state all material facts in the record of this civil action and/or which are
judicially noticeable, which show or tend to show that plaintiff's are entitled to more than 50% of all fees sought
by plaintiff until the January 11, 2017 Notice of Settlement was filed between plaintiff and the City Defendants.

) (Defendants' counsel): Concisely state all material facts in the record of this civil action and/or which are
judicially noticeable, which show or tend to show that plaintiff is not entitled to more than 50% of all fees sought
by plaintiff until the January 11, 2017 Notice of Settlement was filed between plaintiff and the City Defendants.

 APPENDIX "B"

) (Plaintiff's counsel): Concisely state all material facts in the record of this civil action and/or which are judicially noticeable, which show or tend to show that plaintiff's are entitled all, some or any attorneys' fees incurred after the filing of the the January 11, 2017 Notice of Settlement between plaintiff and the City Defendants --- including because plaintiff contends that the claim on which plaintiff went to trial was related to plaintiff's claims against the City Defendants.

) (Defendants' counsel): Concisely state all material facts in the record of this civil action and/or which are judicially noticeable, which show or tend to show that plaintiff is not entitled to any attorneys' fees sought for attorney' time billed after the filing of the the January 11, 2017 Notice of Settlement between plaintiff and the City Defendants --- including because Defendants contend that the claim on which plaintiff went to trial was not related to plaintiff's claims against the City Defendants.


) (Plaintiff's counsel): Concisely state all material facts in the record of this civil action and/or which are judicially noticeable, which show or tend to show that plaintiff's are entitled to more than 50% of all fees sought by plaintiff until January 19, 2017 --- the date the Court bifurcated the Monell claim and the state-based causes of action were dismissed.

) (Defendants' counsel): Concisely state all material facts in the record of this civil action and/or which are judicially noticeable, which show or tend to show that plaintiff is not entitled to more than 50% of all fees sought by plaintiff until January 19, 2017 --- the date the Court bifurcated the Monell claim and the state-based causes of action were dismissed.


) (Plaintiff's counsel): Concisely state all material facts in the record of this civil action and/or which are judicially noticeable, which show or tend to show that plaintiff's are entitled all, some or any attorneys' fees incurred after January 19, 2017 --- including for attorney time spent on any matter concerning plaintiff's First Amendment claim (including i/c/w the MSJ re the First Amendment claim) and/or plaintiff's 42 U.S.C. sec. 2000aa claim.

) (Defendants' counsel): Concisely state all material facts in the record of this civil action and/or which are judicially noticeable, which show or tend to show that plaintiff is not entitled to any attorneys' fees sought for attorney' time billed after January 19, 2017 --- including for attorney time spent on any matter concerning plaintiff's First Amendment claim b(including i/c/w the MSJ re the First Amendment claim) and/or plaintiff's 42 U.S.C. sec. 2000aa claim and/or the MJS re the Monell claim.

) (Defendants' counsel): Separately with respect to each and every cause of action/claim withdrawn and/or dismissed, prior to the jury's verdict on plaintiff's Fourth Amendment claim, concisely state all material facts which show or tend to show that the cause of action/claim did not involve a "common core of facts" and/or were not based on one or more related legal theories and/or was a separate and distinct claim from the Fourth Amendment claim.


**SEH, Special Master**

# PROOF OF SERVICE BY EMAIL & U.S. MAIL

Re: Escochea, Jesus vs. County of Los Angeles, et al. (19908)
Reference No. 1220057216

I, Geraldine Yulo, not a party to the within action, hereby declare that on September 13, 2017, I served the attached AMENDED REPORT AND RECOMMENDATION OF SPECIAL MASTER, PURSUANT TO COURT'S ORDER OF AUGUST 10, 2017 on the parties in the within action by Email and by depositing true copies thereof enclosed in sealed envelopes with postage thereon fully prepaid, in the United States Mail, at Los Angeles, CALIFORNIA, addressed as follows:

## VIA EMAIL ONLY:

**Shannon E. Reilly | Courtroom Deputy Clerk**
to the Honorable John F. Walter
350 W. 1st Street | Courtroom 7A | Los Angeles, CA 90012
T: 213.894.5396 | shannon_reilly@cacd.uscourts.gov

Lisa L. Peterson Esq.
Collins Collins Muir & Stewart LLP
750 The City Dr. S.
Suite 400
Orange, CA 92868
Phone: 714-823-4100
lpeterson@ccmslaw.com
    Parties Represented:
    Ronald Valdivia

Tomas A. Guterres Esq.
Collins Collins Muir & Stewart LLP
1100 El Centro St.
South Pasadena, CA 91030
Phone: 626-243-1100
tguterres@ccmslaw.com
    Parties Represented:
    Ronald Valdivia

Lisa V. Houle Esq.
Houle Law APC
1230 Rosecrans Ave
Suite 300
Manhattan Beach, CA 90266
Phone: 424-332-9079
lisa@houle-law.com
    Parties Represented:
    Jesus Escochea

Philip K. Cohen Esq.
Philip Kent Cohen, APC
100 Wilshire Blvd
Suite 1300
Santa Monica, CA 90401
Phone: 310-451-9111
pcohen@pcohenlaw.com
    Parties Represented:
    Jesus Escochea

Thomas M. Ferlauto Esq.
L/O Thomas Ferlauto
8 Whatney Ave.
Suite 101
Irvine, CA   92618
Phone: 949-334-8650
tmf@lawofficetmf.com
    Parties Represented:
    Jesus Escochea


     I declare under penalty of perjury the foregoing to be true and correct. Executed at Los Angeles,

CALIFORNIA on  September 13, 2017.


_____

Geraldine Yulo
GYulo@jamsadr.com